## JOHN BACON et al. *v.* JOHN LEEDS.

A person who has hired slaves is entitled to be reimbursed the expenses incurred for necessary clothing and medical attendance.

A person who has hired slaves is bound to give notice to the owner, in case any of the slaves fall sick or run away. If he does not, he cannot claim any deduction of the hire from the loss of time incurred, from either of those causes. C. C., 2695.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *T. L. Bayne*, for plaintiffs. *Elmore* and *King*, for defendant. The judgment of the court (*Eustis*, C. J., absent,) was pronounced by

ROST, J. The defendant is sued as the surety, *in solido*, of *Jonathan Davis*, for $800, this being the sum agreed upon between the agent of the plaintiffs and

*Davis* for the hire of certain slaves. It is shown that two of the slaves were sick, and that two others runaway and continued absent during the greater part of the time the lease lasted. The defendant claims a reduction on the amount of the lease on that account. He also claims the cost of clothing and medical attendance, and the jail fees paid by him for one of the runaways.

The district judge considered the claims of the defendant well founded, and deducted $370 on account thereof from the plaintiffs' demand. The latter have appealed.

It is usual, when slaves are hired on a plantation, to stipulate that the lessee shall clothe them and furnish the necessary medical attendance during the continuance of the lease; but the contract between the parties in this case does not contain that stipulation, and the right of the defendant to be indemnified for expenses incurred by him on those accounts, cannot be doubted. We think the evidence fully authorizes the amounts allowed by the district judge for that portion of the claim.

It was correctly stated by the defendant's counsel, that our law does not recognize a qualified ownership in the lessee during the continuance of the lease. With us, the thing leased remains at the risk of the lessor; he is bound to maintain the lessee in peaceable possession of it, and to keep it in a proper state of repair while that possession lasts. He is under warranty to the lessee against the vices and defects of the thing leased, which may prevent its being used, although he may have been ignorant of their existence, and even if they have arisen since the lease was made, provided they do not arise from the fault of the lessee. C. C., 2663, 2665. But there is in the code, a special provision in relation to leases of slaves. Article 2695 provides that it is the duty of a person who has one or several slaves on hire, to give immediate notice to the owner, should any of them happen to get sick, or to runaway, in defect whereof he shall be liable in damages. The French text is, *à peine de tout dommages et intérêts qui en pourraient resulter;* that is to say, which might result to the owner, not from the omission of the lessee to give notice, but from the sickness or the running away of the slaves.

It is not pretended that any notice was given to the plaintiffs or their agent. The defendant was alone notified of the running away of the slaves by *Davis'* overseer, and he took no steps whatever for the recovery of them.

Article 2695, C. C. must, in all cases, receive the interpretation under which it will have effect, rather than that in which it would have none. It would be a dead letter in this case, unless the damages, to which it refers, include those which the defendant claims from the plaintiff for the loss of the services of the slaves. Indeed, if that article was not in the code, it is difficult to perceive how, on general principles, the plaintiff could be held responsible for not restoring the defendant to the possession of the runaways, when, instead of being notified that they had absconded, they were kept to the last under the belief that the lease was in due course of execution, and that their property was producing fruits. It is in proof, that the first slave who runaway was sent by his former master, to the plaintiffs' agent, who restored him to *Davis*, and the agent has testified, that if he had received the notice which the code requires to be given, he would immediately have attended to the sick, and caused the runaways to be apprehended and restored to the defendant. A reward, sufficient to insure the apprehension of the runaways would, no doubt, have been offered, and the sick might have been brought back to the city and restored to health by means of appliances and skill not to be had on a remote and secluded plantation.

BACON
v.
LEEDS.

In cases of ordinary sickness which the parties could reasonably anticipate at the time of the lease, or of a short absence of any of the slaves without leave, the lessee is not bound to give notice, and would not be entitled to a diminution of the hire, if he gave it. But in cases where the disease or the unauthorized absence continues for any length of time, notice to the owner must be shown before the lessee can claim indemnity for the loss of the services of the slaves.

We are, therefore, of opinion, that this portion of the defendant's claim must be rejected.

It is ordered, that the judgment in this case be reversed. It is further ordered and decreed, that the plaintiffs recover from the defendant the sum of $660, with legal interest, from the 11th February, 1851, till paid, with costs in both courts.